

**SEALED**

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | 8:21CR 253 |
| Plaintiff, | INDICTMENT |
| vs. | 18 U.S.C. § 1349 |
| | 18 U.S.C. § 1343 |
| TAMIKA R. CROSS, RONNIE E. CROSS | 18 U.S.C. § 2 |
| AND DAVIDA J. ANDERSON, | 18 U.S.C. § 1957 |
| | 18 U.S.C. § 981(a)(1)(C) |
| Defendants. | 18 U.S.C. § 982(a)(2)(A) |

**FILED**
**US DISTRICT COURT**
**DISTRICT OF NEBRASKA**

**SEP 2 4 2021**

**OFFICE OF THE CLERK**

The Grand Jury charges that

### COUNT I
Conspiracy to Commit Wire Fraud

1.      During and between an unknown date, but no later than in or about April 2020, and in or about May 2021, in the District of Nebraska and elsewhere, the defendants, TAMIKA R. CROSS, RONNIE E. CROSS and DAVIDA J. ANDERSON, did knowingly and intentionally attempt and conspire with each other and with other persons, both known and unknown to the Grand Jury, to commit an offense against the United States, namely, wire fraud, Title 18, United States Code, Section 1343, a violation of Title 18, United States Code, Section 1349.

### *Object of the Conspiracy*

2.      It was a part and object of the conspiracy that TAMIKA R. CROSS, RONNIE E. CROSS and DAVIDA J. ANDERSON, and others, having devised and intended to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, caused to be transmitted by means of wire and radio communication in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme or artifice, in violation of Title 18, United States Code, Section 1343.

### *The Parties*

3.      TAMIKA R. CROSS and RONNIE E. CROSS reside together in Omaha. TAMIKA R. CROSS reportedly received wages in 2019 and 2020 from Lifechangers Academy.

1

4.     DAVIDA J. ANDERSON resides in Omaha. She operated and continues to operate Lifechangers Academy, a day care business with locations in the Omaha area.

### *The Paycheck Protection Program*

5.     The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in March 2020 and designed to provide emergency financial assistance to the millions of Americans suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses to preserve jobs by paying for certain expenses. This financial relief was referred to as the Paycheck Protection Program ("PPP"). Starting in December 2020, the PPP was renewed and the deadlines to apply were extended. Small businesses that received PPP loans in 2020 could apply for additional emergency assistance, referred to as a "Second Draw," until May 31, 2021.

6.     To obtain a PPP loan, a qualifying business was required to submit a PPP loan application, designated as an SBA Form 2483, which was signed by an authorized representative of the business. Applications could be submitted directly to a lender, or to an intermediary such as a loan broker that would forward the application to a lender. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative) was required to state, among other things, that it was in operation as of February 15, 2020, the number of its employees and its average monthly payroll expenses. These figures, among other factors, determined the amount of money the small business could borrow under the PPP. In addition, businesses applying for a PPP loan were required to provide documents showing they were in operation during the relevant times and showing their payroll expenses.

7.     A PPP loan application was processed by a participating lender, which often was a financial institution, such as a bank, a financial technology company, such as an online lender, or a small business loan company. In the course of processing the loan, the lender would transmit data from the borrower's application, including information about the borrower, the stated number of employees and payroll figures, and the total amount of the prospective loan, to the Small Business Administration (SBA). If approved, the lender funded the PPP loan using its own monies, the repayment of which was guaranteed by the SBA, and wired the loan proceeds to the account designated by the applicant.

2

8.    The PPP required loan proceeds to be used only for certain business expenses, including payroll costs, mortgage interest, rent, and utilities.

### *The Scheme to Defraud*

9.    TAMIKA R. CROSS, RONNIE E. CROSS and DAVIDA J. ANDERSON knowingly executed, and attempted to execute, a scheme and artifice to defraud lenders and the SBA by means of materially false and fraudulent pretenses, representations, and promises made on and in connection with PPP loan applications, and caused to be transmitted by means of wire and radio communication in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme or artifice and to obtain money and property to which they were not legally entitled, as stated below ("the Scheme").

10.    As part of the Scheme, TAMIKA R. CROSS provided direction and guidance to other participants concerning how to fraudulently obtain PPP funds. She produced and provided false documents to other participants, submitted false applications on behalf of herself and others, and received PPP loan proceeds that had been fraudulently obtained. RONNIE E. CROSS signed false documents, submitted false applications, and received PPP loan proceeds that had been fraudulently obtained. DAVIDA J. ANDERSON signed false documents, submitted false applications, received PPP loan proceeds that had been fraudulently obtained, and paid kickbacks to TAMIKA R. CROSS.

11.    As part of the Scheme, TAMIKA R. CROSS, RONNIE E. CROSS and DAVIDA J. ANDERSON created and attempted to create the appearance that certain businesses and sole proprietorships (the "Phony Businesses") were genuine, had been in operation as of February 15, 2020, had paid employees or contractors and were otherwise qualified to receive PPP loans. Among other things, TAMIKA R. CROSS, RONNIE E. CROSS and DAVIDA J. ANDERSON accomplished and caused to be accomplished after February 15, 2020 one or more of the following, all in the names of the Phony Businesses:

    a.  registered trade names with the Nebraska Secretary of State;

    b.  obtained Employee Identification Numbers from the Internal Revenue Service;

    c.  established web sites; and

    d.  set up or changed the name on business bank accounts.

12.    In truth and in fact, as TAMIKA R. CROSS, RONNIE E. CROSS and DAVIDA J. ANDERSON well knew, the Phony Businesses were not genuine, were not in operation as of

February 15, 2020 and had no paid employees or paid independent contractors during 2019 and 2020. The Phony Businesses included the following:

a.  Cross Montessori Angels, LLC (CMA);

b.  Oscelean Cross Thrift Shop & Ronnie Cross Moving and Towing, LLC, doing business as Ronnie Cross Moving and Trucking (OCT);

c.  A Church Without Walls, LLC (CWA);

d.  Tamika Cross (as a self-employed sole proprietor) (TC);

e.  Ronnie Cross (as a self-employed sole proprietor) (RC);

f.  Ah-Ha Consulting, LLC (AHC); and

g.  Davida Anderson (as a self-employed sole proprietor) (DA).

13.     It was further part of the Scheme that TAMIKA R. CROSS, RONNIE E. CROSS and DAVIDA J. ANDERSON submitted and caused to be submitted applications for PPP loans (the "Applications") that contained material misrepresentations concerning the Phony Businesses and their operation. Some Applications were submitted directly to lenders, and others were submitted to intermediaries such as loan brokers that forwarded the applications to lenders, which processed the Applications and forwarded information about them to the SBA. Among other things, TAMIKA R. CROSS, RONNIE E. CROSS and DAVIDA J. ANDERSON misrepresented and caused to be misrepresented the following material facts on PPP loan Applications:

a.  that the Phony Businesses were in operation as of February 15, 2020;

b.  that the Phony Businesses had employees for whom each paid salaries and payroll taxes, or else had paid independent contractors;

c.  that the Phony Businesses had specified average monthly payroll expenses;

d.  that the loan proceeds would be used only for business-related purposes that were allowed by the terms of the loan, such as business payroll, rent and utilities;

e.  that each did not own any other purported business; and

f.  that the purported business had not and would not receive another PPP loan for the same year.

In truth and in fact, as TAMIKA R. CROSS, RONNIE E. CROSS and DAVIDA J. ANDERSON well knew, none of the Phony Businesses were in operation as of February 15, 2020; none had employees for whom they paid salaries and payroll taxes, or had paid independent contractors; none had specified average monthly payroll expenses; the loan proceeds were not intended to be

4

used, and were not used, only for business-related purposes that were allowed by the terms of the loan, such as payroll, rent and utilities for the applicant business; TAMIKA R. CROSS, RONNIE E. CROSS and DAVIDA J. ANDERSON owned other purported businesses; and certain of the purported businesses did apply for and receive another PPP loan for the same year.

14.    It was further part of the Scheme that TAMIKA R. CROSS AND RONNIE E. CROSS created and caused various Articles of Organization for limited liability companies, applications for trade names, and other corporate records to be filed with the Nebraska Secretary of State. TAMIKA R. CROSS, RONNIE E. CROSS and other participants in the Scheme subsequently used such records to, among other things, show the ownership and existence of the Phony Businesses and to open business bank accounts where PPP funds would be received.

15.    It was further part of the Scheme that TAMIKA R. CROSS, RONNIE E. CROSS and DAVIDA J. ANDERSON created and caused to be created, at or near the time of submission, various email accounts that were used in connection with the submission of Applications and communications with lenders.

16.    It was further part of the Scheme that TAMIKA R. CROSS, RONNIE E. CROSS and DAVIDA J. ANDERSON created and caused to be created false documents to support the misrepresentations contained in the Applications. Among other things, TAMIKA R. CROSS, RONNIE E. CROSS and DAVIDA J. ANDERSON created and caused to be created false bank statements, false earnings statements, false payroll records and false tax documents.

17.    It was further part of the Scheme that TAMIKA R. CROSS, RONNIE E. CROSS and DAVIDA J. ANDERSON submitted and caused to be submitted false documents in support of the Applications. Among other things, TAMIKA R. CROSS, RONNIE E. CROSS and DAVIDA J. ANDERSON submitted and caused to be submitted false bank statements, false earnings statements, false payroll records and false tax documents.

18.    It was further part of the Scheme that, after receiving funds on behalf of the Phony Businesses, TAMIKA R. CROSS, RONNIE E. CROSS and DAVIDA J. ANDERSON conducted and caused to be conducted bank transactions to create the appearance that certain payments were for payroll or other business expenses that were permitted by the terms of the PPP loans.

19.    It was further part of the scheme that PPP loan recipients, including DAVIDA J. ANDERSON, after receiving loan proceeds, provided to TAMIKA R. CROSS kickback payment(s) disguised as payroll, fees or consulting fees.

***Relevant Lenders and Financial Institutions***

20.     Lender 1 was a federally insured financial institution based in Utah. Lender 1 participated as a PPP lender to small businesses.

21.     Lender 2 was a small business lending company with offices in New Jersey. Lender 2 participated in the SBA's PPP by, among other things, funding loans.

22.     Lender 3 was a financial technology company with offices in California, Colorado and in foreign countries. Lender 3 participated in the SBA's PPP by, among other things, funding loans.

23.     Lender 4 was a federally insured financial institution based in Utah. Lender 4 participated as a PPP lender to small businesses.

24.     Lender 5 was a federally insured financial institution based in Oklahoma. Lender 5 participated as a PPP lender to small businesses.

25.     Lender 6 was a financial technology company headquartered in Delaware and with offices in New York and other states, but not in Nebraska. Lender 6 participated in the SBA's PPP by, among other things, funding loans.

26.     Financial Institution 1 was a credit union located in Nebraska.

27.     Financial Institution 2 was a financial institution located in Nebraska.

28.     Financial Institution 3 was a financial institution located in New York with branch locations in Nebraska.

29.     Financial Institution 4 was a credit union located in Nebraska.

***PPP Loan Application Submitted to Lender 1***

30.     On or about April 30, 2020, TAMIKA R. CROSS caused an electronic PPP application in the name of CMA to be submitted that was provided to Lender 1. The PPP application requested $20,832 to support CMA's purported operation. In the application, TAMIKA R. CROSS falsely affirmed or caused to be falsely affirmed, among other information, that: (i) CMA was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors; (ii) the funds would be used to retain workers and maintain payroll or make other payments, all as specified under the PPP Rules; and (iii) CMA had ten employees and an average monthly payroll of $8,333.

31.     The CMA PPP application appended as supporting documentation: (i) a false and

6

fraudulent purported IRS Form Schedule C (Profit or Loss From Business) for the year 2019 claiming that CMA had gross receipts of $360,000 and a net profit of $360,000 in 2019; and (ii) false earnings statements from CMA for 2019 and January-February 2020.

32.     Lender 1 agreed to make the requested PPP loan.  On or about May 4, 2020, Lender 1 sent a wire transfer in the amount of $20,832 to an account created by TAMIKA R. CROSS and designated by her to receive PPP loan proceeds for CMA, specifically, account number XX-3122 at Financial Institution 1 in Nebraska.

### *PPP Loan Application Submitted to Lender 2*

33.     On or about May 20, 2020, TAMIKA R. CROSS caused an electronic PPP application in the name of CWW to be submitted that was provided to Lender 2.  The PPP application requested $37,500 to support CWW's purported operation. In the application, TAMIKA R. CROSS falsely affirmed or caused to be falsely affirmed, among other information, that: (i) CWW was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors; (ii) the funds would be used to retain workers and maintain payroll or make other payments, all as specified under the PPP Rules; (iii) during the period from February 15, 2020 to December 31, 2020, the Applicant (CWW) had not and would not receive another loan under the PPP Program; and (iv) CWW had ten employees and an average monthly payroll of $15,000.

34.     The CWW PPP application appended as supporting documentation: (i) a false and fraudulent IRS Form Schedule C (Profit or Loss From Business) for the year 2019 claiming that CWW had gross receipts of $779,166 and a net profit of $183,000 in 2019; (ii) a false and fraudulent IRS Form 944, Employer's Annual Federal Tax Return, claiming that CWW paid a total of $180,000 in wages during 2019; and (iii) four false and fraudulent IRS Form 941s, Employer's Quarterly Federal Tax Return, claiming that CWW paid $45,000 in wages during each quarter of 2019.

35.     Lender 2 agreed to make the requested PPP loan.  On or about August 14, 2020, Lender 2 sent a wire transfer in the amount of $37,500 to an account created by TAMIKA R. CROSS and designated by her to receive PPP loan proceeds for CWW, specifically, account number XX-1981 at a branch of Financial Institution 2 in Nebraska.

### *PPP Loan Application Submitted to Lender 3*

36.     On or about May 27, 2020, RONNIE E. CROSS caused an electronic PPP application in the name of OCT to be submitted that was provided to Lender 3. The PPP application requested $20,000 to support OCT's purported operation. In the application, RONNIE E. CROSS falsely affirmed or caused to be falsely affirmed, among other information, that: (i) OCT was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors; (ii) the funds would be used to retain workers and maintain payroll or make other payments, all as specified under the PPP Rules; and (iii) OCT had two employees and an average monthly payroll of $8,000.

37.     The OCT PPP application appended as supporting documentation: (i) false and fraudulent purported Earnings Statements claiming that OCT paid RONNIE E. CROSS a gross salary of $15,000 per month during January to March, 2020; (ii) a false and fraudulent bank statement for OCT for the period February 1 through February 29, 2020 from Financial Institution 3; (iii) a false and fraudulent IRS Form 944, Employer's Annual Federal Tax Return, claiming that OCT paid a total of $135,000 in wages during 2019; and (iv) a false and fraudulent IRS Form 941, Employer's Quarterly Federal Tax Return, claiming that OCT paid $135,000 in wages during the first three months of 2019.

38.     Lender 3 agreed to make the requested PPP loan. On or about June 4, 2020, Lender 3 caused a wire transfer to be sent in the amount of $20,000 to an account created by RONNIE E. CROSS and designated by him to receive PPP loan proceeds for OCT, specifically, account number XX-0651 at a branch of Financial Institution 3 in Nebraska.

### *PPP Loan Application Submitted to Lender 4*

39.     On or about May 28, 2020, TAMIKA R. CROSS caused an electronic PPP application in the name of CWW to be submitted that was provided to Lender 4. The PPP application requested $43,125 to support CWW's purported operation. In the application, TAMIKA R. CROSS falsely affirmed or caused to be falsely affirmed, among other information, that: (i) CWW was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors; (ii) that the funds would be used to retain workers and maintain payroll or make other payments, all as specified under the PPP Rules; and (iii) CWW had two employees and an average monthly payroll of $17,250.

40.     The CWW PPP application appended as supporting documentation: (i) a false and fraudulent bank statement for CWW for the period February 1 through February 29, 2020 from

8

Financial Institution 3; (ii) a false and fraudulent IRS Form 944, Employer's Annual Federal Tax Return, claiming that CWW paid a total of $180,000 in wages during 2019; (iii) four false and fraudulent IRS Form 941s, Employer's Quarterly Federal Tax Return, claiming that CWW paid $45,000 in wages during each quarter of 2019.

41.     Lender 4 agreed to make the requested PPP loan. On or about May 29, 2020, Lender 4 sent a wire transfer in the amount of $43,125 to an account created by TAMIKA R. CROSS and designated by her to receive PPP loan proceeds for CWW, specifically, account number XX-4062 at a branch of Financial Institution 3 in Nebraska.

### *PPP Loan Application Submitted to Lender 1*

42.     On or about June 18, 2020, DAVIDA J. ANDERSON caused an electronic PPP application in the name of AHC to be submitted that was provided to Lender 1. The PPP application requested $58,332 to support AHC's purported operation. In the application, DAVIDA J. ANDERSON falsely affirmed or caused to be falsely affirmed, among other information, that: (i) AHC was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors; (ii) the funds would be used to retain workers and maintain payroll or make other payments, all as specified under the PPP Rules; (iii) DAVIDA J. ANDERSON did not own any other business; and (iv) AHC had two employees and an average monthly payroll of $23,333.

43.     The AHC PPP application appended as supporting documentation a false and fraudulent IRS Form 944, Employer's Annual Federal Tax Return, claiming that AHC paid a total of $279,996 in wages during 2019.

44.     Lender 1 agreed to make the requested PPP loan. On or about June 30, 2020, Lender 1 caused a wire transfer in the amount of $58,332 to be sent to an account created by DAVIDA J. ANDERSON and designated by her to receive PPP loan proceeds for AHC, specifically, account number XX-8603 at a branch of Financial Institution 1 in Nebraska.

### *PPP Loan Application Submitted to Lender 2*

45.     On or about June 22, 2020, TAMIKA R. CROSS caused an electronic PPP application in the name of TC to be submitted that was provided to Lender 2. The PPP application requested $20,000 to support TC's purported operation. In the application, TAMIKA R. CROSS falsely affirmed or caused to be falsely affirmed, among other information, that: (i) TC was in operation on February 15, 2020 and had employees for whom she paid salaries and payroll taxes

or paid independent contractors; (ii) the funds would be used to retain workers and maintain payroll or make other payments, all as specified under the PPP Rules; and (iii) TC had two employees and an average monthly payroll of $8,038.

46.     The TC PPP application appended as supporting documentation: (i) a false and fraudulent bank statement for TC for the period February 1 through February 31, 2020 from Financial Institution 1; (ii) a false and fraudulent IRS Form Schedule C (Profit or Loss From Business) for the year 2019 claiming that TC had gross receipts of $180,000 and a net profit of $165,000 in 2019; and (iii) a second false and fraudulent IRS Form Schedule C (Profit or Loss From Business) for the year 2019 claiming that TC had gross receipts of $97,000 and a net profit of $97,000 in 2019.

47.     Lender 2 agreed to make the requested PPP loan.  On or about August 7, 2020, Lender 2 sent a wire transfer in the amount of $20,000 to an account created by TAMIKA R. CROSS and designated by her to receive PPP loan proceeds for TC, specifically, account number XX-8884 at a branch of Financial Institution 1 in Nebraska.

### PPP Loan Application Submitted to Lender 2

48.     On or about August 4, 2020, DAVIDA J. ANDERSON caused an electronic PPP application in the name of DA to be submitted that was provided to Lender 2.  The PPP application requested $20,100 to support DA's purported operation.  In the application, DAVIDA J. ANDERSON falsely affirmed or caused to be falsely affirmed, among other information, that: (i) DA was in operation on February 15, 2020 and had employees for whom she paid salaries and payroll taxes or paid independent contractors; (ii) the funds would be used to retain workers and maintain payroll or make other payments, all as specified under the PPP Rules; (iii) DAVIDA J. ANDERSON did not own any other business; and (iv) DA had three employees and an average monthly payroll of $8,041.

49.     The DA PPP application appended as supporting documentation: (i) a false and fraudulent IRS Form Schedule C (Profit or Loss From Business) for the year 2019 claiming that Home Health Care was DA's principal business, that she had gross receipts of $97,000 and a net profit of $96,500 in 2019; and (ii) a false and fraudulent IRS Form 1099-MISC, Miscellaneous Income, claiming that LBS 1000 paid to DA a total of $97,000 in compensation during 2019.

50.     Lender 2 agreed to make the requested PPP loan.  On or about August 26, 2020, Lender 2 sent a wire transfer in the amount of $20,100 to an account created by DAVIDA J.

ANDERSON, specifically, account number XX-8603 at a branch of Financial Institution 1 in Nebraska.

### *PPP Loan Application Submitted to Lender 2*

51.     On or about January 19, 2021, TAMIKA R. CROSS caused an electronic PPP application (Second Draw) in the name of CWW to be submitted that was provided to Lender 2. The PPP application requested $37,500 to support CWW's purported operation. In the application, TAMIKA R. CROSS falsely affirmed or caused to be falsely affirmed, among other information, that: (i) CWW was in operation on February 15, 2020, had not permanently closed and had employees for whom it paid salaries and payroll taxes or paid independent contractors; (ii) the funds would be used to retain workers and maintain payroll or make other payments, all as specified under the PPP Rules; (iii) CWW received a first draw PPP loan and used the funds only for eligible expenses; and (iv) CWW had ten employees and an average monthly payroll of $15,000.

52.     The CWW PPP application appended as supporting documentation: (i) a false and fraudulent IRS Form Schedule C (Profit or Loss From Business) for the year 2019 claiming that CWW had gross receipts of $779,166 and a net profit of $183,000 in 2019; (ii) a false and fraudulent IRS Form 944, Employer's Annual Federal Tax Return, claiming that CWW paid a total of $180,000 in wages during 2019; and (iii) four false and fraudulent IRS Form 941s, Employer's Quarterly Federal Tax Return, claiming that CWW paid $45,000 in wages during each quarter of 2019.

53.     Lender 2 agreed to make the requested PPP loan. On or about February 17, 2021, Lender 2 sent a wire transfer in the amount of $37,500 to an account created by TAMIKA R. CROSS and designated by her to receive PPP loan proceeds for CWW, specifically, account number XX-1981 at a branch of Financial Institution 2 in Nebraska.

### *PPP Loan Application Submitted to Lender 4*

54.     On or about January 25, 2021, TAMIKA R. CROSS caused an electronic PPP application (Second Draw) in the name of CWW to be submitted that was provided to Lender 4. The PPP application requested $43,125 to support CWW's purported operation. In the application, TAMIKA R. CROSS falsely affirmed or caused to be falsely affirmed, among other information, that: (i) CWW was in operation on February 15, 2020, had not permanently closed and had employees for whom it paid salaries and payroll taxes or paid independent contractors; (ii) the

11

funds would be used to retain workers and maintain payroll or make other payments, all as specified under the PPP Rules; (iii) CWW received a first draw PPP loan and used the funds only for eligible expenses; and (iv) CWW had two employees and an average monthly payroll of $17,250.

55.     The CWW PPP application appended as supporting documentation: (i) false and fraudulent bank statements for CWW for the periods ending February 29, 2020 and December 31, 2020 from Financial Institution 2; (ii) four false and fraudulent IRS Form 941s, Employer's Quarterly Federal Tax Return, claiming that CWW paid $45,000 in wages during each quarter of 2019.

56.     Lender 4 agreed to make the requested PPP loan.  On or about February 18, 2021, Lender 4 sent a wire transfer in the amount of $43,125 to an account created by TAMIKA R. CROSS and designated by her to receive PPP loan proceeds for CWW, specifically, account number XX-1981 at a branch of Financial Institution 2 in Nebraska.

***PPP Loan Application Submitted to Lender 5***

57.     On or about February 10, 2021, RONNIE E. CROSS caused an electronic PPP application (Second Draw) in the name of RC to be submitted that was provided to Lender 5.  The PPP application requested $20,000 to support RC's purported operation. In the application, RONNIE E. CROSS falsely affirmed or caused to be falsely affirmed, among other information, that: (i) RC was in operation on February 15, 2020, had not permanently closed and was either an eligible self-employed individual, independent contractor, or sole proprietorship with no employees, or had employees for whom he paid salaries and payroll taxes or paid independent contractors; (ii) the funds would be used to retain workers and maintain payroll or make other payments, all as specified under the PPP Rules; (iii) RC received a first draw PPP loan and used the funds only for eligible expenses; and (iv) RC had one employee and an average monthly payroll of $8,000.

58.     The RC PPP application appended as supporting documentation: (i) a false and fraudulent bank statement for RC for the period ending February 29, 2020 from Financial Institution 4; (ii) a false and fraudulent IRS Form 1099-MISC, Miscellaneous Income, claiming that RC Associates paid a total of $96,000 in non-employee compensation to RC during 2019; and (iii) a false and fraudulent IRS Form Schedule C, Profit or Loss from Business, claiming that RC had gross receipts of $180,000 and a net profit of $165,000 during 2019.

59.     Lender 5 agreed to make the requested PPP loan. On or about February 18, 2021, Lender 5 sent a wire transfer in the amount of $20,000 to an account created by RONNIE E. CROSS and designated by him to receive PPP loan proceeds for RC, specifically, account number XX-1936 at a branch of Financial Institution 4 in Nebraska.

### *PPP Loan Application Submitted to Lender 6*

60.     On or about February 13, 2021, TAMIKA R. CROSS caused an electronic PPP application (Second Draw) in the name of CMA to be submitted that was provided to Lender 6. The PPP application requested $100,000 to support CMA's purported operation. In the application, TAMIKA R. CROSS falsely affirmed or caused to be falsely affirmed, among other information, that: (i) CMA was in operation on February 15, 2020, had not permanently closed and had employees for whom it paid salaries and payroll taxes or paid independent contractors; (ii) the funds would be used to retain workers and maintain payroll or make other payments, all as specified under the PPP Rules; (iii) CMA received a first draw PPP loan and used the funds only for eligible expenses; and (iv) CMA had five employees and an average monthly payroll of $40,000.

61.     The CMA PPP application appended as supporting documentation: (i) false and fraudulent bank statements for CMA for the period August 2020 to January 2021 from Financial Institution 2; (ii) a false and fraudulent purported IRS Form 940, Employer's Annual Federal Unemployment Tax Return for the year 2019, claiming that CMA paid $480,000 to employees in 2019; and (iii) and a false and fraudulent purported IRS Form 941, Employer's Quarterly Federal Tax Return, claiming that CMA paid $180,000 to five employees in the first quarter of 2019.

62.     Lender 6 agreed to make the requested PPP loan. On or about March 4, 2021, Lender 6 sent a wire transfer in the amount of $100,000 to an account created by TAMIKA R. CROSS and designated by her to receive PPP loan proceeds for CMA, specifically, account number XX-1114 at Financial Institution 2 in Nebraska.

### *Scope of the Conspiracy*

63.     As part of the conspiracy, TAMIKA R. CROSS, RONNIE E. CROSS and DAVIDA J. ANDERSON submitted fraudulent Applications seeking PPP loans in the amount of at least $2,173,080.00, and actually obtained PPP loans in the amount of $489,514.00.

All in violation of Title 18, United States Code, Section 1349.

### COUNTS II-VI

13

Wire Fraud

64.     Paragraphs 3 through 63 of Count One of this Indictment are re-alleged and incorporated as if fully set forth herein, and set forth a scheme and artifice to defraud.

65.     On or about the dates set forth below, in the District of Nebraska and elsewhere, the defendants, TAMIKA R. CROSS, RONNIE E. CROSS and DAVIDA J. ANDERSON, having devised and intended to devise a scheme and artifice to defraud, and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme and artifice and attempting to do so, did knowingly transmit and cause to be transmitted by means of wire communication in interstate commerce the writings, signs, signals, and pictures described below for each count, and did aid and abet the same, as follows:

| Count | Defendant | Date | Description of Wire |
|---|---|---|---|
| II | TAMIKA R. CROSS | August 14, 2020 | Wire transfer of $37,500 from Lender 2 in New Jersey to account number XX-1981 at a branch of Financial Institution 2 in Nebraska |
| III | RONNIE E. CROSS | June 4, 2020 | Wire transfer of $20,000 originated by Lender 3 in Colorado to account number XX-0651 at a branch of Financial Institution 3 in Nebraska |
| IV | DAVIDA J. ANDERSON | June 30, 2020 | Wire transfer of $58,332 originated by Lender 1 in Utah to account number XX- 8603 at a branch of Financial Institution 1 in Nebraska. |
| V | TAMIKA R. CROSS | February 18, 2021 | Wire transfer of $43,125 from Lender 4 in Utah to account number XX-1981 at a branch of Financial Institution 2 in Nebraska |
| VI | RONNIE E. CROSS | February 18, 2021 | Wire transfer in the amount of $20,000 from Lender 5 to account number XX-1936 at a branch of Financial Institution 4 in Nebraska |

All in violation of Title 18, United States Code, Sections 1343 and 2.

COUNTS VII-XIII

Money Laundering

66.     On or about the dates set forth below, in the District of Nebraska and elsewhere, the defendants, TAMIKA R. CROSS, RONNIE CROSS and DAVIDA J. ANDERSON, did knowingly engage and attempt to engage in a monetary transaction by, through or to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, as set forth below, and did aid and abet the same, such property having been derived from

a specified unlawful activity, that is: Wire Fraud and Conspiracy to Commit Wire Fraud, as alleged in Counts I through VI, in violation of Title 18, United States Code, Sections 1343, 1349 and 2.

| Count | Defendant | Date | Description of Transaction |
|---|---|---|---|
| VII | TAMIKA R. CROSS | May 29, 2020 | Transfer of $43,100 from CWW business account, account number XX-4062 at Financial Institution 3, to TAMIKA R. CROSS personal account, account number XX-1654, at Financial Institution 3 |
| VIII | TAMIKA R. CROSS | June 3, 2020 | Withdrawal of $20,000 from TAMIKA R. CROSS personal account, account number XX-1654, at Financial Institution 3 |
| IX | RONNIE E. CROSS | June 8, 2020 | Withdrawal of $15,000 from OCT business account, account number XX-0651, at Financial Institution 3 |
| X | TAMIKA R. CROSS | August 19, 2020 | Transfer of $20,000 from CWW business account, account number XX-4901 at Financial Institution 1, to TAMIKA R. CROSS personal account, account number XX-8884, at Financial Institution 1 |
| XI | DAVIDA J. ANDERSON | August 21, 2020 | Negotiated check for $35,000 payable to Davida Anderson from AHC business account, account number XX-8603, at Financial Institution 1 |
| XII | DAVIDA J. ANDERSON | October 1, 2020 | Negotiated check for $17,000 payable to Davida Anderson from AHC business account, account number XX-8603, at Financial Institution 1 |
| XIII | RONNIE E. CROSS and TAMIKA R. CROSS | February 9, 2021 | Purchase of a vehicle from Motion Auto Sales for $11,180 in cash. |

All in violation of Title 18, United States Codes, Sections 1957 and 2.

## FORFEITURE ALLEGATION

1.     The allegations contained in this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(2)(A).

15

2.    Upon conviction of one or more of the offenses set forth in Counts I-VI of this Indictment, the defendants, TAMIKA R. CROSS, RONNIE E. CROSS and DAVIDA J. ANDERSON, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(2), any property constituting, or derived from, proceeds the defendant obtained directly or indirectly, as the result of such violation. The property to be forfeited includes, but is not limited to, the following:

        a.  Funds not exceeding $1,076.53 contained in account number xxxx1981 at Access Bank;

        b.  Funds not exceeding $11,640.89 contained in account number xxxx1114 at Access Bank;

        c.  Funds not exceeding $2,506.83 contained in account number xxxx3431936 in the name of Ronnie Cross (TIN:  xxx-xx-7865) at Cobalt Credit Union;

        d.  A money judgment in an amount equal to the proceeds obtained as a result of the offenses.

3.    If any of the property described above, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States of America, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the defendant up to the value of the property described above as being subject to forfeiture.

All pursuant to 18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 982(a)(2)(A), 28 U.S.C. § 2461(c), and Rule 32.2(a), Federal Rules of Criminal Procedure.

A TRUE BILL.

_____
FOREPERSON

The United States of America requests that trial of this case be held in Omaha, Nebraska, pursuant to the rules of this Court.

_____
John E. Higgins #19546

17