```
                                                                    FILED
                                                              U.S. DISTRICT COURT
                                                             DISTRICT OF NEBRASKA

                                                             2023 JUN 15 PM 2:04

                                                             OFFICE OF THE CLERK
```

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| vs. | 8:21CR253 |
| TAMIKA R. CROSS, | PLEA AGREEMENT |
| Defendant. | |

IT IS HEREBY AGREED between the plaintiff, United States of America, through its counsel, Steven A. Russell, United States Attorney, and John E. Higgins, Assistant United States Attorney, and defendant, Tamika R. Cross, and Michael J. Hansen, counsel for defendant, as follows:

I

THE PLEA

A. CHARGE(S) & FORFEITURE ALLEGATION(S).

Defendant agrees to plead guilty to Count I of the Superseding Indictment. Count I charges a violation of Title 18, United States Code, Section 1349. Defendant further admits forfeiture allegation(s) 2(a), 2(b) and 2(d) as set forth in the Superseding Indictment. The parties agree the identified property to be forfeited is $887.64 seized from account number xxxx1981 at Access Bank and $170.24 seized from account number xxxx1114 at Access Bank. Defendant further agrees to entry of a judgment against her in the dollar amount of Paycheck Protection Loans and Economic Injury Disaster Loans and grants obtained during 2020 and 2021 on behalf of Defendant and/or on behalf of businesses purportedly owned by her.

B. In exchange for the defendant's plea of guilty as indicated above, the United States agrees as follows:

1. The United States will, at the time of sentencing, move to dismiss the original Indictment, Counts II, V, X, XI, and XIII and XVI of the Superseding Indictment and the remaining Forfeiture Allegation(s) of the Superseding Indictment.

2. The United States agrees that the defendant will not be federally prosecuted in the District of Nebraska for offenses related to government program fraud or money laundering as

1

disclosed by the discovery material delivered to the defendant's attorney as of the date this agreement is signed by all parties, other than as set forth in paragraph A, above. This agreement not to prosecute the defendant for specific crimes does not prevent any prosecuting authority from prosecuting the defendant for any tax offense or any other crime, or for any crime involving physical injury or death.

II

NATURE OF THE OFFENSE

A. ELEMENTS EXPLAINED.

Defendant understands that the offense to which defendant is pleading guilty has the following elements:

Count I

1. Two or more people reached an agreement to commit the crime of wire fraud;
2. the defendant voluntarily and intentionally joined in the agreement, either at the time it was first reached or at some later time while it was still in effect; and
3. at the time the defendant joined in the agreement, the defendant knew the purpose of the agreement.

B. ELEMENTS UNDERSTOOD AND ADMITTED - FACTUAL BASIS.

Defendant has fully discussed the facts of this case with defense counsel. Defendant has committed each of the elements of the crime, and admits that there is a factual basis for this guilty plea. The following facts are true and undisputed.

Starting in 2020, the Small Business Administration (SBA) guaranteed Paycheck Protection Program (PPP) loans to small businesses. To obtain a loan, the representative of the applicant business had to certify that the business was in operation as of February 15, 2020, that it had a certain number of employees as of the date of the application, that it had a specified average monthly payroll, and that it would use the funds for payroll and other specified business purposes. The amount of the PPP loan depended on the business's average monthly payroll. A business was eligible for a loan equal to 2 ½ times its monthly payroll. The greater the business's average monthly payroll, therefore, the larger the loan the business could obtain, subject to a cap. Financial institutions and other private lenders received and processed applications, forwarded information to the SBA so the funds could be earmarked, and funded the PPP loans with their own money.

Individuals could also apply for loans under the Economic Injury Disaster Loan ("EIDL") program. EIDL proceeds could be used only for working capital to pay expenditures necessary to alleviate the specific economic injury the small business suffered due to COVID-19. EIDL funds were issued directly from the United States Treasury, and an applicant applied through the SBA via an online portal. Applicants for EIDL loans certified information concerning the business and the business owner, including the business's gross revenue and cost of goods sold for the 12-month period preceding the disaster, which, for COVID-19, was defined as January 31, 2020. In 2020, a business was eligible for a loan equal to ½ of gross profit. Starting in April 2021, a business was eligible for a loan equal to twice gross profit. Overstating a business's purported gross revenue or understating its cost of goods sold, therefore, increased the dollar amount of a loan the business could obtain, subject to a cap

Starting in 2020, Tamika Cross provided direction and guidance to others concerning successfully applying for PPP and EIDL loans, creating the appearance of an ongoing business, creating phony supporting documents, and obtaining a bigger loan by inflating the amount the businesses paid in past compensation or had received in revenue.

During 2020 and 2021, Defendant submitted or caused to be submitted applications for PPP and EIDL loans on behalf of herself as a sole proprietor and on behalf of her purported businesses, Cross Montessori Angels, LLC (CMA); A Church Without Walls, LLC (CWA); and Nebraska Montessori Project. She obtained funding for several PPP loans and an EIDL grant. In the loan applications, Defendant misrepresented and caused to be misrepresented the average monthly payroll that her purported businesses paid, the net revenue from her purported businesses, and/or the gross income Defendant received as a sole proprietor. For example, in an April 2020 application for a $20,832 PPP loan that was funded by a lender, Defendant certified that CMA had ten employees and that its average monthly payroll was $8,333. Defendant in fact did not have employees and had no payroll. In a February 2021 application for a $43,125 PPP loan that was funded by a lender, Defendant certified that CWW had two employees and that its average monthly payroll was $17,250. CWW in fact did not have employees and had no payroll.

Defendant submitted and caused to be submitted fraudulent documents in support of PPP loan applications, including:

- a false bank statement in the name of Defendant for the month of February 2020, which did not match the activity reported on the genuine bank statement;

- false Form 941 tax forms, claiming that CWW paid $45,000 in wages during each quarter of 2019; and
- a false and fraudulent purported IRS Form Schedule C (Profit or Loss From Business) for the year 2019 claiming that CMA had gross receipts of $360,000.

Defendant also assisted with preparing PPP and EIDL applications on behalf of more than ten other persons. The applications substantially inflated the compensation paid by the businesses and the gross revenues earned by the businesses. Defendant also prepared fraudulent documents for submission in support of loan applications, such as false tax documents.

In 2020 and 2021, Defendant submitted, and assisted others in submitting, applications for PPP and EIDL loans and advances. The applications contained material misrepresentations and were supported by false documents. Defendant and her confederates obtained approximately $903,238 in loans and advances. In order to avoid double counting for multiple PPP and EIDL applications submitted to the same lender, on behalf of the same named entity, during the same eligibility year, Defendant should be held responsible for a total intended loss of more than $1,500,000 but less than $3,500,000.

On or about September 29, 2021, agents seized $887.64 from account number xxxx1981 at Access Bank, and $170.24 from account number xxxx1114 at Access Bank. Those were the remaining funds in both accounts from proceeds obtained fraudulently in the manner described above.

### III

### PENALTIES

A. Defendant understands that the crime to which Defendant is pleading guilty carries the following penalties:

COUNT I

1. A maximum twenty years in prison;
2. A maximum $250,000 fine;
3. A mandatory special assessment of $100 per count; and
4. A term of supervised release of not more than 3 years. Defendant understands that failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring defendant to serve in prison all or part of the term of supervised release.

4

5. Possible ineligibility for certain Federal benefits.

IV

## AGREEMENT LIMITED TO U.S. ATTORNEY'S OFFICE
## DISTRICT OF NEBRASKA

This plea agreement is limited to the United States Attorney's Office for the District of Nebraska, and cannot bind any other federal, state or local prosecuting, administrative, or regulatory authorities.

V

## SENTENCING ISSUES

A. SENTENCING AGREEMENTS.

Although the parties understand that the Guidelines are advisory and only one of the factors the court will consider under 18 U.S.C. § 3553(a) in imposing a sentence, the parties will jointly recommend the following Base Offense Level, Specific Offense Characteristics, Adjustments and Departures (if applicable). Unless otherwise stated, all agreements as to sentencing issues are made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B).

1. The parties agree that Defendant's Base Offense Level as to Count I is seven, pursuant to USSG § 2B1.1(a)(1).
2. The parties agree that Defendant should receive a sixteen-offense level increase as to Count I for the reason the offense involved an intended loss of more than more than $1,500,000 but less than $3,500,000, pursuant to USSG § 2B1.1(b)(1)(G).
3. The parties have no agreement concerning whether Defendant's offense level as to Count I should be increased or decreased based on her role, pursuant to U.S.S.G. §§ 3B1.1 and 3B1.2.
4. If the defendant is found to be entitled to an offense level reduction under U.S.S.G. 3E1.1(a) for acceptance of responsibility, the United States hereby moves that the court reduce the defendant's offense level by one additional level, pursuant to U.S.S.G. § 3E1.1(b), if that paragraph otherwise applies.
5. The Defendant acknowledges restitution will be ordered as a part of the sentence in this case, and the Defendant agrees the Court may order restitution to all persons or organizations for loss or harm directly and proximately caused by the Defendant's

relevant conduct regardless of whether that person or organization is a victim of the offense of conviction.

6. The Defendant understands that a schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on methods, available to the United States to enforce the judgment. If incarcerated, the Defendant agrees to participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless whether the Court specifically directs participation or imposes a payment schedule. Pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due immediately and subject to immediate enforcement by the United States as provided for in Section 3613. The Defendant agrees to provide all of Defendant's financial information to the United States and the Probation Officer, and agrees, if requested, to participate in a pre-sentencing debtor exam.

B. ACCEPTANCE OF RESPONSIBILITY.

Notwithstanding paragraph A above, the United States will **not** recommend any adjustment for Acceptance of Responsibility if defendant:

1. Fails to admit a complete factual basis for the guilty plea at the time it is entered, or
2. Denies involvement in the offense, gives conflicting statements about that involvement, or is untruthful with the court or probation officer, or
3. Fails to appear in court, or
4. Engages in additional criminal conduct, or
5. Attempts to withdraw the guilty plea, or
6. Refuses to abide by any lawful court order, or
7. Contests or assists any third party in contesting the forfeiture of property(ies)seized or forfeited in connection with this case.

The parties further agree the defendant will make no "blanket" objections to the criminal history calculation (specific objections based on stated grounds are permitted). Objections to criminal history on the basis that the defendant was not the person who was convicted of the offense(s) described in the presentence investigation report or on the basis that the defendant was not represented by counsel in connection with such conviction(s), if determined to be unfounded, are evidence the defendant has not accepted responsibility and the parties agree no credit for acceptance of responsibility should be given.

C. ADJUSTMENTS, DEPARTURES & REDUCTIONS UNDER 18 U.S.C. § 3553.

The parties agree that defendant may request or recommend additional downward adjustments, departures, including criminal history departures under U.S.S.G. § 4A1.3, and sentence reductions under 18 U.S.C. § 3553(a), and that the United States will oppose any such downward adjustments, departures, and sentence reductions not set forth in Section V, paragraph A above.

D. CRIMINAL HISTORY.

The parties have no agreement concerning the defendant's Criminal History Category, except that if defendant is determined to be a Career Offender, the parties agree that the defendant is automatically a Criminal History Category VI pursuant to U.S.S.G. § 4B1.1(b).

E. "FACTUAL BASIS" AND "RELEVANT CONDUCT" INFORMATION.

The parties agree that the facts in the "factual basis" paragraph of this agreement, if any, are true, and may be considered as "relevant conduct" under U.S.S.G. § 1B1.3 and as the nature and circumstances of the offense under 18 U.S.C. § 3553(a)(1).

The parties agree that all information known by the office of United States Pretrial Service may be used by the Probation Office in submitting its presentence report, and may be disclosed to the court for purposes of sentencing.

VI

DEFENDANT WAIVES APPEAL AND COLLATERAL ATTACK

The defendant hereby knowingly and expressly waives any and all rights to appeal the defendant's conviction and sentence, including any restitution order in this case, and including a waiver of all motions, defenses, and objections which the defendant could assert to the charges or to the Court's entry of Judgment against the defendant, and including review pursuant to 18 U.S.C. § 3742 of any sentence imposed, except:

(a) As provided in Section I above, (if this is a conditional guilty plea); and

(b) A claim of ineffective assistance of counsel.

The defendant further knowingly and expressly waives any and all rights to contest the defendant's conviction and sentence in any post-conviction proceedings, including any proceedings under 28 U.S.C. § 2255, except:

7

(a) The right to timely challenge the defendant's conviction and the sentence of the Court should the Eighth Circuit Court of Appeals or the United States Supreme Court later find that the charge to which the defendant is agreeing to plead guilty fails to state a crime.

(b) The right to seek post-conviction relief based on ineffective assistance of counsel.

If defendant breaches this plea agreement, at any time, in any way, including, but not limited to, appealing or collaterally attacking the conviction or sentence, the United States may prosecute defendant for any counts, including those with mandatory minimum sentences, dismissed or not charged pursuant to this plea agreement. Additionally, the United States may use any factual admissions made by defendant pursuant to this plea agreement in any such prosecution.

## VII
## BREACH OF AGREEMENT

Should it be concluded by the United States that the defendant has committed a crime subsequent to signing the plea agreement, or otherwise violated this plea agreement, the defendant shall then be subject to prosecution for any federal, state, or local crime(s) which this agreement otherwise anticipated would be dismissed or not prosecuted. Any such prosecution(s) may be premised upon any information, statement, or testimony provided by the defendant.

In the event the defendant commits a crime or otherwise violates any term or condition of this plea agreement, the defendant shall not, because of such violation of this agreement, be allowed to withdraw the defendant's plea of guilty, and the United States will be relieved of any obligation it otherwise has under this agreement, and may withdraw any motions for dismissal of charges or for sentence relief it had already filed.

## VIII
## SCOPE OF AGREEMENT

A. This plea agreement embodies the entire agreement between the parties and supersedes any other agreement, written or oral.

B. By signing this agreement, the defendant agrees that the time between the date the defendant signs this agreement and the date of the guilty plea will be excluded under the Speedy Trial Act. The defendant stipulates that such period of delay is necessary in order for the defendant to have opportunity to enter the anticipated plea of guilty, and that the ends of justice

served by such period of delay outweigh the best interest of the defendant and the public in a speedy trial.

 C. The United States may use against the defendant any disclosure(s) the defendant has made pursuant to this agreement in any civil proceeding. Nothing contained in this agreement shall in any manner limit the defendant's civil liability which may otherwise be found to exist, or in any manner limit or prevent the United States from pursuing any applicable civil remedy, including but not limited to remedies regarding asset forfeiture and/or taxation.

 D. Pursuant to 18 U.S.C. § 3013, the defendant will pay to the Clerk of the District Court the mandatory special assessment of $100 for each felony count to which the defendant pleads guilty. The defendant will make this payment at or before the time of sentencing.

 E. By signing this agreement, the defendant waives the right to withdraw the defendant's plea of guilty pursuant to Federal Rule of Criminal Procedure 11(d). The defendant may only withdraw the guilty plea in the event the court rejects the plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(5). Furthermore, defendant understands that if the court rejects the plea agreement, whether or not defendant withdraws the guilty plea, the United States is relieved of any obligation it had under the agreement and defendant shall be subject to prosecution for any federal, state, or local crime(s) which this agreement otherwise anticipated would be dismissed or not prosecuted.

 F. This agreement may be withdrawn by the United States at any time prior to its being signed by all parties.

## IX

## MODIFICATION OF AGREEMENT MUST BE IN WRITING

 No promises, agreements or conditions have been entered into other than those set forth in this agreement, and none will be entered into unless in writing and signed by all parties.

X
## DEFENDANT AND COUNSEL FULLY UNDERSTAND AGREEMENT

By signing this agreement, defendant certifies that defendant read it (or that it has been read to defendant in defendant's native language). Defendant has discussed the terms of this agreement with defense counsel and fully understands its meaning and effect.

|  |  |
|---|---|
|  | UNITED STATES OF AMERICA<br>STEVEN A. RUSSELL<br>United States Attorney |
| 6/15/2023<br>Date | _____<br>John E. Higgins<br>ASSISTANT U.S. ATTORNEY |
| 04/19/2023<br>Date | _____<br>Tamika R. Cross<br>DEFENDANT |
| 04/19/2023<br>Date | _____<br>Michael J. Hansen<br>COUNSEL FOR DEFENDANT |